IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>BENSON HSU,<br>a.k.a. Hung Yen Hsu, a.k.a. Charles Hsu,<br><br>   Defendant. | **REPORT AND RECOMMENDATION**<br><br><br>Case No. 2:14 CV 77<br><br>District Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |

   This is an action under 8 U.S.C. § 1451(a) (2012) brought by Plaintiff, the United States of America ("United States"), against Defendant, Benson Hsu ("Hsu"), to revoke and set aside the order admitting Hsu as a United States citizen.  (Docket No. 2.)

   On February 5, 2014, the District Court referred the case to this Court under 28 U.S.C. § 636(b)(1)(B) to hear dispositive motions and issue a Report and Recommendation.  (Docket No. 7.)  On November 7, 2014, the United States moved for summary judgment on Counts I and III of its complaint under Rule 56(a) of the Federal Rules of Civil Procedure.  (Docket No. 19.) The United States argues that Hsu illegally procured citizenship because he committed unlawful acts that adversely reflected upon his moral character during the period he was required to show good moral character to naturalize.  (Docket No. 2, 19.)  The United States also argues that Hsu procured citizenship by misrepresenting or concealing material facts regarding his criminal history.  (*Id.*)

Having reviewed the United States' motion for summary judgment, Defendant's opposition to the same, and holding oral argument, this Court **RECOMMENDS** to the District Court that the motion be **GRANTED** as to Count I of the Complaint and **DENIED** as to Count III of the Complaint.

## I.    FACTUAL BACKGROUND[1]

Hsu is a native of Taiwan. (Docket No. 20.) On April 22, 1989, Hsu was admitted to the United States as a permanent resident. (*Id.*) On March 9, 1993, Hsu travelled from Dallas, Texas, to Taipei, Taiwan. (*Id.*) After landing, Taiwanese authorities uncovered a disassembled gun in Hsu's luggage, specifically hidden inside an amplifier and speaker. (Docket No. 19, Exhibits 9, 10; Docket No. 20 at 7.) As a result, Taiwanese authorities detained and arrested Hsu. (Docket No. 20 at 7.)

On May 24, 1993, the Taoyuan, Taiwan District Court convicted Hsu of illegally importing controlled goods without authorization, transporting a handgun without authorization, and transporting bullets without authorization. (Docket No. 19, Exhibit 9; Docket No. 20 at 7.) In a decision rendered January 10, 1994, the Taiwan High Court, sitting on appeal from the Taoyuan District Court decision, upheld Hsu's conviction of transporting a handgun without authorization, and sentenced Hsu to five years of incarceration. (*Id.*) Hsu was not present in Taiwan at the time the appellate court rendered judgment, having left Taiwan on or about June 23, 1993. (Docket No. 20 at 7.)

On October 4, 1994, Hsu applied to naturalize as a United States citizen by filing Form N-400, Application for Naturalization, with the legacy U.S. Immigration and Naturalization

---

[1] The following material facts are undisputed unless otherwise indicated.

Service ("INS").[2] (*Id.* at 7.) Form N-400 asked Hsu questions relating to his criminal history; specifically, whether he had been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking any law. (Docket No. 19, Exhibit 2; Docket No. 20 at 10.) While it is undisputed that Hsu's Form N-400 lists "no" as the answer to this question, Ex. 2, Form N-400, the parties dispute whether Hsu himself made this representation. Hsu contends that his prior attorney prepared the Form N-440, answered the question, and that he just merely signed Form N-400. (Docket No. 20 at 10.)

On February 22, 1995, Officer Esteban Garcia ("Officer Garcia") of the INS interviewed Hsu in connection with his application for naturalization. *Id.* However, the parties dispute facts relating to how the interview transpired. The United States contends that Officer Garcia asked Hsu whether he had any arrests or convictions, and that Hsu said "no." (Docket No. 19 at 8-9.) Hsu disputes this allegation. (Docket No. 20 at 10.) Instead, Hsu contends that he was never asked questions regarding his criminal history during his short interview. (*Id.*) Hsu also claims that Officer Garcia did not follow proper procedures when conducting naturalization interviews and that Officer Garcia's performance reviews reveal that there were issues with his processing of naturalization applications. (Docket No. 20 at 14-15; Docket No. 24 at 5-7.) Notwithstanding what exactly transpired at Hsu's naturalization interview, on March 7, 1995, the INS approved his application for naturalization, and on June 9, 1995, Hsu naturalized as a United States citizen

---

[2] On March 1, 2003, the functions of the former INS were transferred from the Department of Justice to three distinct agencies (United States Immigration and Customs Enforcement, United States Customs and Border Protection, and United States Citizenship and Immigration Services) in the newly formed Department of Homeland Security ("DHS"). *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

after taking the oath of allegiance before the United States District Court for the Southern District of Texas. (Docket No. 20 at 11.)

## II. LEGAL BACKGROUND

### A. Summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 947 (10th Cir. 2011).

### B. Law governing revocation of naturalization.

The Court must revoke an individual's naturalization and cancel his Certificate of Naturalization if his naturalization was either (1) illegally procured, or (2) procured by concealment of a material fact or by willful misrepresentation. 8 U.S.C. § 1451(a); *see also Fedorenko v. United States*, 449 U.S. 490, 517 (1981). Naturalization is "illegally procured" when an individual was naturalized as a United States citizen in spite of not meeting the naturalization requirements. *See Fedorenko*, 449 U.S. 490 at 506. An individual procures naturalization by concealment of a material fact or willful misrepresentation if (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process, (2) the misrepresentation or concealment was willful, (3) the fact was material, and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *See Kungys v. United States*, 485 U.S. 759, 767 (1988).

Relevant to this case is the good moral character requirement for naturalization. To naturalize, an individual must establish that he was a person of good moral character during the statutory period which begins five years before the applicant files his application for naturalization until he takes the oath of allegiance and becomes a United States citizen. 8 U.S.C. §§ 1427(a)(1), (3); 8 C.F.R. § 316.10(a)(1). The Immigration and Nationality Act and related regulations do not define the term "good moral character" but provide a non-exhaustive list of the conduct that precludes a finding of good moral character. *See* 8 U.S.C. § 1101(f)(1)-(9); 8 C.F.R. § 316.10(b). The regulations provide that an applicant lacks good moral character if, during the statutory period, he committed an unlawful act that adversely reflects upon his moral character and no extenuating circumstances are present. 8 C.F.R. § 316.10(b)(3)(iii); *United States v. Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007) (holding that committing the unlawful acts during the statutory period, for which the alien was later convicted, demonstrated a lack of good moral character under 8 C.F.R. § 316.10(b)(3)(iii)). This regulation is a reasonable construction of the good moral character regulations. *United States v. Jean-Baptiste*, 395 F.3d 1190, 1194 (11th Cir. 2005).

### III.   ANALYSIS

A. **Hsu was ineligible for United States citizenship for lack of good moral character because Hsu's commission and subsequent conviction of illegal transport of a weapon into Taiwan is an unlawful act that adversely reflected upon his moral character.**

The United States argues that Hsu illegally procured citizenship because he lacked good moral character during the statutory period. (Docket No. 19 at 15.) The United States contends that the absence of good moral character stems from Hsu's commission and conviction of illegally transporting a weapon into Taiwan. (*Id.*) This crime precluded Hsu from establishing

good moral character because the illegal transport of a weapon into Taiwan is an unlawful act that adversely reflected upon his moral character and no extenuating circumstances were present. (*Id*. at 15-17; 8 C.F.R. § 316.10(b)(3)(iii)). Hsu opposes summary judgment on the basis that there are genuine issues of material facts regarding his moral character. (Docket No. 20 at 15-23.) For the reasons described below, this Court agrees with the United States that Hsu lacked good moral character because he committed an unlawful act that adversely reflected upon his moral character, and no extenuating circumstances were present.

### 1. Hsu's act of illegally transporting a weapon concealed in a stereo system and amplifier is an unlawful act.

The undisputed facts establish that, as a matter of law, Hsu committed an unlawful act. An unlawful act covers any act that rises to the level of criminality. *Jean-Baptiste*, 395 F.3d at 1194. An act is unlawful simply for the fact that it is illegal or criminal. *See United States v. Lekarczyk*, 354 F. Supp. 2d 883, 887 (W.D. Wis. 2005) (noting that the dictionary definition of "unlawful" as against the law, illegal, or against moral or ethical standards). Taiwan's Gun Provisions criminalize the illegal importing of weapons into Taiwan. (Docket No. 19, Exhibit 17.) And as the Taiwan judgment demonstrates, Hsu committed the act of illegally importing a weapon into Taiwan. (*Id*., Exhibit 9.) Therefore, Hsu committed a criminal act in Taiwan that amounts to an unlawful act. *See* 8 C.F.R. § 316.10(b)(3)(iii).

### 2. Hsu's crime of illegally transporting a weapon into Taiwan adversely reflects upon his moral character.

Second, the Court concludes the undisputed facts demonstrate that Hsu's unlawful conduct adversely reflects upon his moral character. In this regard, the Court recognizes that it must engage in a fact-specific analysis and, as a guide, the Court considers whether Hsu's

conduct goes against the standards of an average citizen of the community.  *See* 8 C.F.R. § 316.10(a)(2) (stating that good moral character determinations are made "on a case-by-case basis taking into account . . . the standards of the average citizen in the community of residence.").

Hsu's crime of illegally transporting a weapon from Dallas into Taiwan adversely reflects upon his moral character.  The illegal transportation of weapons is conduct that requires the surreptitious violation of the laws of two jurisdictions.  *Cf.* (Docket No 19, Exhibit 17 (discussing Taiwan's proscription against illegal weapon smuggling), *with* 18 U.S.C. § 922(a)(1) (prohibiting exportation of weapons); *United States v. Bernandino*, 44 F. App'x 73, 74 (5th Cir. 2011) (upholding conviction for illegal exportation of firearms)).  Hsu's unlawful acts reflect adversely on him because they evince a disregard of public safety and the laws of two sovereigns.  Indeed, while *lawful* use and possession of firearms is accepted conduct of the average citizen of Texas (Hsu's community at the time of naturalization), the Court is not persuaded that unlawful transportation of firearms by airplane to a foreign country would be acceptable.  *See* 8 C.F.R. § 31.10(a)(2).

Hsu contends that the Taiwan crime does not adversely reflect upon his moral character because it is a strict liability offense that does not require intent in order to be convicted. (Docket No. 20 at 16.)  This argument fails for two reasons.  Taiwanese law shows that a conviction of this kind does require intent, and the evidence demonstrates that Hsu acted with intent to commit the Taiwanese crime, which adversely reflects upon his character as an individual who knowingly disregards the law.  And whether the crime requires intent is not dispositive, as the nature of Hsu's crime adversely reflects upon his moral character.

7

First, Taiwanese law requires that intent be proven in order to obtain a conviction, and the conviction record establishes that Hsu acted with intent. A willful or intentional violation of the law adversely reflects upon moral character because it reflects "a knowing disregard of the law" by part of the naturalization applicant. *Khamoospour v. Holder*, 781 F. Supp. 2d 888, 896-97 (D. Ariz. 2011). While it is true that the Taiwan Gun Provisions does not list a *mens rea* requirement (see Docket No. 19, Exhibit 17), the Taiwan Criminal Code states that intent is an element of all crimes unless a different *mens rea* is listed.[3] *See* Taiwan Crim. Code arts. 12-14, *available at* Judicial Yuan, Republic of China, Major Statutes of the Republic of China, Vol. II (June 1992). It thus follows that the Taiwan Gun Provisions require intent in order to be convicted, as the Taiwan High Court judgment reflects.[4] That court's judgment specifically states that Hsu transported a weapon into Taiwan "[w]ith intent to transport." This purposeful disregard of the law adversely reflects on Hsu as it demonstrates a willful disregard of both foreign and domestic law by engaging in the willful traffic of controlled items. *See Paul v. Johnson*, 2014 WL 2532472 at *4 (N.D.N.Y., June 5, 2014) (holding that willful disregard of the law adversely reflects upon moral character); *Khamooshpour*, 781 F. Supp. 2d at 896-97 (finding that willful violation of Embargo Law adversely reflects upon moral character).

---

[3] The *mens rea* requirements are found in Chapter II of the general provisions of the Taiwan Criminal Code. Article 11 of the Taiwan Criminal Code incorporates all general provisions of the criminal code into all other Taiwanese criminal statutes. *See* Taiwan Crim. Code art. 11, *available at* Judicial Yuan, Republic of China, Major Statutes of the Republic of China, Vol. II (June 1992).

[4] The Court reviews a question of foreign law *de novo*. *See* Fed. R. Civ. P. 44.1 ("The court's determination [of a question of foreign law] must be treated as a ruling on a question of law."); *Grimm v. Comm'r*, 894 F.2d 1165, 1166 (10th Cir. 1990) (holding that the court's interpretation of Philippine law is subject to de novo review).

Second, regardless of the intent requirement of the Taiwanese crime, "some acts adversely reflect on a person's moral character strictly owing to the nature of the act itself." *United States v. Jammal*, 2015 WL 541941 at *5 (S.D.W.Va., Feb. 9, 2015), *aff'd*, 2015 WL 3561249 (4th Cir., June 9, 2015).  In *Jammal*, the defendant alleged that repackaging infant formula, a crime resulting in a misdemeanor conviction, did not adversely reflect upon his moral character because he did not know that the conduct was prohibited. *Id.*  The court rejected this argument because the nature of his crime placed children's health in danger for mere economic gain. *Id.*  Similarly here, it does not matter whether Hsu's crime required a showing of intent – the nature of Hsu's crime is enough to show that illegally transporting a weapon into Taiwan adversely reflects upon his moral character.  As explained above, Hsu's crime implicates the violation of the laws of two jurisdictions.  Further, it involved the unlawful importation of a firearm.  Thus, regardless of whether Hsu's crime required intent, the nature of the crime itself adversely reflects upon Hsu's moral character.

Hsu also alleges that his conduct does not adversely reflect upon moral character because his conduct was not "immoral, evil, or malicious."  (Docket No. 20 at 17-18.)  However, this is the standard used to determine whether a crime involves moral turpitude and not whether an unlawful act adversely reflects upon moral character.  *See Rodriguez-Heredia v. Holder*, 639 F.3d 1264, 1268 (10th Cir. 2011).  While the statute and regulations provide that a person who commits a crime involving moral turpitude lacks good moral character, 8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A), 1427(a)(3); 8 C.F.R. § 316.10(b)(2)(i), this is not the basis of the United States' argument.  In fact, as courts have noted, moral turpitude and the unlawful acts regulations are distinct, and "an 'unlawful act' under 8 C.F.R. § 316.10(b)(3)(iii) does not necessarily have to be

9

a crime involving moral turpitude in order to reflect adversely on an applicant's moral character." *Khamooshpour*, 781 F. Supp. 2d at 896.

### 3. No extenuating circumstances excuse Hsu's conduct.

Even if the unlawful act adversely reflects upon moral character, Hsu may still have good moral character if extenuating circumstances exist. 8 C.F.R. § 316.10(b)(3). Extenuating circumstances must relate "to the reasons showing lack of good character, including acts negating good character, not the consequences of these matters." *Jean-Baptiste*, 395 F.3d at 1195; *accord United States v. Suarez*, 664 F.3d 655, 662 (7th Cir. 2011) (stating that extenuating circumstances exist if they render the crime less reprehensible or tend to palliate or lessen guilt).

A review of the facts and circumstances surrounding Hsu's crime reveal that no extenuating circumstances exist. The weapon Hsu attempted to smuggle was disassembled with the component pieces wrapped in foil and concealed in a speaker and stereo system. (Docket No. 19, Exhibit 9 at 26-27, Exhibit 10 at 33.) When confronted at the Taiwan airport, Hsu lied by telling police that the bag belonged to a person who did not exist. (Docket No. 19, Exhibit 9 at 27.) These facts surrounding the crime do not lessen or palliate Hsu's guilt but instead demonstrate aggravating circumstances which serve to negate the existence of good moral character. *Suarez*, 664 F.3d at 662; *Jean-Baptiste*, 395 F.3d at 1195.

Hsu alleges that there is a genuine dispute of material facts as to whether extenuating circumstances are present because the offense involves only one act and no person was at risk of injury. (Docket No. 20 at 18-19.) While the parties do not dispute that the offense involves only one act and that no person was at immediate risk of injury, (*see* Docket No. 24 at 1-2), these facts are not material because they do not make Hsu's crime any less reprehensible. *See United States*

*v. Salama*, 891 F. Supp. 2d 1132, 1142-43 (E.D. Cal. 2012) (granting summary judgment for the United States where defendant failed to show material facts regarding extenuating circumstances).  Hsu's crime demonstrates his lack of moral character not because he injured others or placed them at risk of injury, but because he acted surreptitiously to avoid law enforcement authorities in both the United States and Taiwan.  Therefore, the lack of an immediate risk of injury to others is not a "factual basis upon which such extenuating circumstances could be found to exist."  *Salama*, 891 F. Supp. 2d at 1142.

**B.     Genuine issues of material fact remain regarding whether Hsu misrepresented or concealed material facts in his application for naturalization.**

The Court recognizes that a ruling in favor of the United States on Count I is sufficient to revoke and set aside Hsu's naturalization.  Nonetheless, the Court addresses the United States' argument that Hsu be denaturalized based on misrepresentation or concealment of a material fact.  With respect to Count III of the Complaint, the Court finds disputed issues of material fact exist as to whether Hsu willfully misrepresented or concealed a material fact.  To succeed on summary judgement the Government has the burden of proving that defendant procured citizenship as a result of willful misrepresentation or concealment of a material fact.  8 U.S.C. § 1451(a); *Kungys v. United States*, 485 U.S. 759, 767 (1988).  Given that Hsu produced sufficient evidence to place material facts in genuine dispute, the court declines to recommend that summary judgment be granted as to Count III.  *See* Fed. R. Civ. P. 56(a).

To be sure, Hsu's application for naturalization did not reveal his arrest and subsequent conviction in Taiwan, which amounts to a misrepresentation.  *Kungys*, 485 U.S. at 767.  The United States, however, must establish that the misrepresentation was willful.  *Id.*  Despite signing his application under penalty of perjury, Hsu alleges that he did not speak sufficient

11

English, did not know the contents of his naturalization application, and therefore did not willfully seek to deceive the government about his criminal history. (Docket No. 20 at 10, 24-27.) The court concludes on balance that these facts place into genuine dispute whether Hsu's misrepresentation was willful. *See* Fed. R. Civ. P. 56(a).

The Court also finds that there is a genuine dispute of material fact regarding whether Hsu willfully misrepresented his prior criminal history during his naturalization interview. Hsu produced work performance reviews of Officer Garcia, the adjudications officer who interviewed him, which show that Officer Garcia at times did not follow certain procedures he was instructed to follow. (Docket No. 20, Exhibit 5 at 48 (stating that Officer Garcia "need[ed] to pay more careful attention to following proper procedure in completing N-400 adjudication.")). The United States argues that whatever general concerns about Officer Garcia's performance exist, there is no evidence to support a conclusion in this particular instance that he was specifically deficient. This, the court concludes, is the type of genuine dispute of material fact that a fact-finder should resolve rather than this court resolve by way of summary judgment.

## IV.     RECOMMENDATION

Based on the analysis above, this Court **RECOMMENDS** that the District Court **GRANT** the United States' motion for summary judgment as to Count I of the Complaint, and **DENY** the motion as to Count III. The Court **RECOMMENDS** that the following **ORDER** be entered:

1.     Defendant Benson Hsu's June 9, 1995, naturalization is revoked, and the Certificate of Naturalization No. 22122496 issued to Mr. Hsu is cancelled. Mr. Hsu is no longer a naturalized United States citizen.

2.      Mr. Hsu is forever restrained and enjoined from claiming or exercising any rights, privileges, or advantages of United States citizenship based on his June 9, 1995, naturalization.

3.      Mr. Hsu is forever restrained and enjoined from claiming or exercising any rights, privileges, or advantages of United States citizenship under any document that evidences United States citizenship based on his June 9, 1995, naturalization.

4.      Mr. Hsu shall immediately surrender and deliver to the United States Attorney General his original Certificate of Naturalization No. 22122496, any United States passport issued to him, and any other indicia of United States citizenship, including any copies thereof, in his possession or control.  Mr. Hsu shall immediately make good faith efforts to recover and then surrender to the United States Attorney General any and all of the above-described items that he knows are in the possession of others.

5.      Mr. Hsu shall deliver the items described above (his original Certificate of Naturalization, his original United States passport, any other indicia of United States citizenship, and all copies thereof) to the United States Attorney General by sending them to the United States Attorney General's representative at the following address: Victor M. Mercado-Santana, United States Department of Justice, P.O. Box 868, Ben Franklin Station, Washington, DC 20044.

6.      A compliance hearing will be scheduled at a time deemed appropriate by the District Court.  Hsu or his counsel, and counsel for the United States shall personally appear at that hearing.  At the hearing, Hsu shall demonstrate that he has complied with the Judgment, or show cause for his failure to comply.  If Hsu retains possession or control of any indicia of

citizenship at the time of the hearing, he or his counsel shall bring those materials with him to the hearing. If, prior to the hearing, the United States is satisfied that Hsu has complied with this Judgment, the United States shall provide notice requesting the Court to vacate the hearing.

DATED: July 21, 2015

_____
DUSTIN B. PEAD
UNITED STATES MAGISTRATE JUDGE